**WRAP–N–PACK, INC., Plaintiff,**

v.

**Howard KAYE and Karen Kaye, Defendants.**

**No. 06CV6034 (ADS)(ETB).**

United States District Court, E.D. New York.

Dec. 14, 2007.

---

Weinberg, Gross & Pergament, LLP, Garden City, NY (Marc A. Pergament, of Counsel), for Plaintiff.

Scarola Ellis LLP, New York City (Richard J.J. Scarola, Mark G. Peters, of Counsel), for Defendant.

## *MEMORANDUM OF DECISION AND ORDER*

ARTHUR D. SPATT, District Judge.

### I. BACKGROUND

On November 9, 2006, Wrap–N–Pack, Inc. ("WNP" or "plaintiff") commenced this action against Howard Kaye, Karen Kaye, and Service Packaging, L.L.C., for, among other things, injunctive relief, and damages for breach of contract and breach of fiduciary duty. Thereafter, the parties stipulated to the dismissal of Service Pack-

aging, L.L.C. from the action. Plaintiff now seeks leave of the Court to amend its complaint pursuant to FED.R.CIV.P. 15(a) to add a demand for punitive damages in connection with its second, third, fourth, fifth, and seventh claims for relief.

WNP is a distributor of corrugated cartons, protective packaging, and packaging materials doing business throughout the New York Metropolitan area. By an agreement effective January 1, 2000 (the "Acquisition Agreement"), WNP purchased the assets of BK Supply Company, Inc., a company owned and operated by defendant Howard Kaye. The Acquisition Agreement contained a non-compete clause in which defendant Howard Kaye agreed that for three and one half years following the effective date of the agreement he "[would] not, within the states of New York, New Jersey and Connecticut, directly or indirectly, ... engage in the business of distributing or sale of corrugated paper products, paper products or packaging supplies, equipment or accessories...."

Contemporaneously with the Acquisition Agreement, defendant Howard Kaye and WNP entered into an executive employment agreement ("Employment Agreement") for an initial term of five years, during which period Howard Kaye could only be terminated for cause. Pursuant to the terms set forth in the Employment Agreement, two one-year extensions of the initial term were possible if Howard Kaye and a colleague satisfied specified sales quotas, otherwise Kaye would become an "at will" employee. According to the complaint because of failure to meet sales quotas, Howard Kaye became an "at will" employee as of January 1, 2005.

The Employment Agreement also contained a non-compete clause, which provided that Howard Kaye "shall devote his full time and attention and best efforts, to the exclusion of all other businesses and ventures, in accordance with the policies and directions of the Corporation...." In addition, the Employment Agreement which stated that Howard Kaye "will not, directly, or indirectly, ... sell or assist in the sale or solicit for sale any paper products, corrugated paper products, or packaging supplies, equipment or accessories (including papers, plastics and metals) of any kind or nature," except pursuant to the agreement.

In its complaint the plaintiff alleges that from the time both agreements took effect and continuing through November 10, 2006, defendant Howard Kaye sold packaging products to customers and potential customers in violation of his fiduciary duty to WNP. The plaintiff further alleges that during most of this period, Howard Kaye allegedly supervised, managed, and served as the acting president of Service Packaging, L.L.C ("Servicing Packaging"), a "reseller" of packaging productions that is both a customer and competitor of WNP.

It is the plaintiff's contention that when defendant Howard Kaye became employed by WNP in 2000, he failed to advise WNP that he was selling and would continue to sell packaging products on behalf of Service Packaging. In addition, the plaintiff alleges that when defendant Howard Kaye became a principal of Service Packaging in 2001, he withheld this information from WNP. The complaint also states that Howard Kaye used WNP property, including a cellular phone, to conduct the business of Service Packaging, and in 2003 he hired another WNP employee to work for Service Packaging. Furthermore, the plaintiff alleges that during the nearly seven years defendant Howard Kaye was employed by WNP, he was paid in excess of $1,000,000 in salary and commissions and that Howard Kaye allegedly sold more than $1,000,000 in packaging products on

behalf of Service Packaging, including to customers of WNP.

On June 21, 2007, the plaintiff filed the instant motion seeking leave to amend the complaint to request punitive damages in connection with the second, third, fourth, fifth and seventh Claims for relief against defendant Howard Kaye on the ground that Howard Kaye's conduct rises to the level necessary for an award of punitive damages. WNP states that when it commenced this action, it was not aware of the full breadth of Howard Kaye's alleged disloyalty and it now believes that punitive damages are appropriate.

## II. DISCUSSION

FED.R.CIV.P. 15(a) provides that "[a] party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served...." However, where as here, a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." A court should deny leave to amend only upon delay, bad faith, futility, or prejudice to the non-moving party. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Aetna Cas. & Sur. Co. v. Aniero Concrete Co., Inc.*, 404 F.3d 566, 604–05 (2d Cir.2005) (stating that leave to amend "should be denied only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps most important, the resulting prejudice to the opposing party") (quoting *Richardson Greenshields Sec., Inc. v. Lau*, 825 F.2d 647, 653 n. 6 (2d Cir.1987)). Here, the defendant opposes plaintiff's proposed amendment solely on the basis that such amendment would be futile because "under New York law, punitive damages are not available in

cases based primarily in contract." (Defendants Opposition, July 16, 2007, at 1).

A determination that a proposed claim is futile is made under the same standards that govern a motion to dismiss under FED.R.CIV.P. 12(b)(6). *See A.V. by Versace, Inc. v. Gianni Versace, S.p.A.*, 160 F.Supp.2d 657, 666 (S.D.N.Y.2001); *Rotblut v. 333 E. 66th St. Corp.*, No. 96CV5228, 1996 WL 586353, at *1 (S.D.N.Y. Oct.11, 1996) ("In addressing the proposed futility of an amendment, the proper inquiry is comparable to that required upon a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6)."). Thus, an amendment is futile "if the proposed amended complaint would be subject to 'immediate dismissal' for failure to state a claim or on some other ground." *Randolph–Rand Corp. of New York v. Tidy Handbags, Inc.*, No. 96CV1829, 2001 WL 1286989, at *5 (S.D.N.Y. Oct.24, 2001) (quoting *Jones v. New York Div. of Military & Naval Affairs*, 166 F.3d 45, 55 (2d Cir.1999)).

In considering a 12(b)(6) motion to dismiss, " '[t]he issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.' " *Aniero Concrete Co., Inc. v. New York City Construction Auth.*, No. 94CV3506, 2000 WL 863208, at *28 (S.D.N.Y. June 27, 2000) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974)). Further, the Court must "accept all of the plaintiff's factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff." *Starr v. Georgeson S'holder, Inc.*, 412 F.3d 103, 109 (2d Cir.2005); *Desiderio v. Nat'l Ass'n of Sec. Dealers, Inc.*, 191 F.3d 198, 202 (2d Cir.1999). A complaint should be dismissed only if it does not contain enough allegations of fact to state a claim for relief that is "plausible on its face."

*Bell Atl. Corp. v. Twombly,* —— U.S. ——, ——, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007). In fact, "[t]he plaintiff's factual allegations must be enough to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Port Dock & Stone Corp. v. Oldcastle Northeast, Inc.,* No. 06CV4908, 2007 WL 3071637, at *2 (2d Cir. Oct. 23, 2007). According to the Second Circuit, "[i]n last term's *Twombly* decision ... the Supreme Court held that a complaint must allege facts that are not merely consistent with the conclusion that the defendant violated the law, but which actively and plausibly suggest that conclusion." *Id.*

According to the plaintiff, it has obtained significant evidence through the course of discovery supporting claims for punitive damages against defendant Howard Kaye in connection with the second ("breach of fiduciary duty of good faith and loyalty"), third ("diversion of corporate opportunities"), fourth ("misappropriation of confidential information and trade secrets"), fifth ("unfair competition"), and seventh ("tortious interference with prospective economic advantage") causes of action. Specifically, the plaintiff asserts that it has discovered compelling evidence that Howard Kaye intentionally and repeatedly breached his fiduciary duty to WNP for more than seven years, which, according to the plaintiff, evinces the level of extreme moral culpability necessary for an award of punitive damages. Thus, the plaintiff states that the proposed amended complaint alleges sufficient facts to support an award of punitive damages.

■ In this case, New York substantive law controls and the Court will adhere to New York rules regarding the imposition of punitive damages. A federal court sitting in diversity must apply the choice of law rules of the forum state. *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Beth Israel Medical Center v. Horizon Blue Cross and Blue Shield of New Jersey, Inc.,* 448 F.3d 573, 582 (2d Cir.2006). New York choice of law rules require a court to apply the law of the state with the most substantial interest in the issue to be resolved. *Kramer, Levin, Nessen, Kamin & Frankel v. Aronoff,* 638 F.Supp. 714, 719 (S.D.N.Y.1986); *Indosuez Int'l. Finance B.V. v. Nat'l Reserve Bank,* 98 N.Y.2d 238, 245, 774 N.E.2d 696, 700, 746 N.Y.S.2d 631, 635 (2002). Here, Howard Kaye is a New York resident who was working in New York for a New York company. Furthermore, both the Acquisition Agreement and the Employment Agreement provide that the parties' relationship will be governed by New York law. Thus, New York has the primary interest in this action and the law of that state will govern here.

■ In opposing the plaintiff's motion to amend the complaint, the defendant argues that it would be futile to allow the plaintiff leave to amend the complaint and plead punitive damages because the claims asserted in the initial complaint are founded on a breach of contract and New York law does not permit punitive damages for such claims. According to the defendant, the plaintiff's claims derive from the Employment Agreement between Howard Kaye and WNP, and the claims based in tort are ancillary and would not exist separate and apart from the agreement.

■ As a general rule, under New York law punitive damages are appropriate in cases involving "gross, wanton, or willful fraud, or other morally culpable conduct." *Action S.A. v. Marc Rich & Co., Inc.,* 951 F.2d 504, 509 (2d Cir.1991). However, "[i]t is a well-settled principle of New York law that the extraordinary remedy of punitive damages is not available for claims asserting merely a breach of contract". *TVT Records v. Island Def*

*Jam Music Group,* 412 F.3d 82, 93–94 (2d Cir.2005); *Aniero,* 2000 WL 863208, at *28. Further, in order to establish entitlement to punitive damages when the claim arises from a breach of contract, the claimant must demonstrate that: (1) the defendant's conduct is actionable as an independent tort; (2) the tortious conduct is of an egregious nature; (3) the egregious conduct was directed to the plaintiff; and (4) the conduct is part of a pattern directed at the public generally. *Aniero,* 2000 WL 863208, at *28.

Two leading New York cases holding that an action grounded on breach of contract cannot be characterized as an action in tort in order to recover punitive damages are *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 662 N.E.2d 763, 639 N.Y.S.2d 283 (1995) and *Rocanova v. Equitable Life Assurance Soc'y. of the U.S.,* 83 N.Y.2d 603, 634 N.E.2d 940, 612 N.Y.S.2d 339 (1994). In *Rocanova,* the New York Court of Appeals decided two actions in a single opinion. The plaintiffs sued their respective insurers claiming unfair settlement practices and sought punitive damages. The Court found that the plaintiffs failed to meet the strict standard required for a showing of punitive damages in contract cases, as "where the conduct constituting, accompanying, or associated with the breach of contract is first actionable as an independent tort for which compensatory damages are ordinarily available, and is sufficiently egregious . . . to warrant the additional imposition of exemplary damages." *Rocanova,* 83 N.Y.2d at 613, 634 N.E.2d at 944, 612 N.Y.S.2d at 343. Further, the Court determined that the plaintiffs failed to show that the defendants' illegal conduct was part of a pattern of conduct directed at the public generally. *Id.* at 613, 634 N.E.2d at 944, 612 N.Y.S.2d at 343.

In *New York Univ.,* the defendant was also an insurance company that denied the plaintiff's claim under a commercial crime insurance policy. *New York Univ.,* 87 N.Y.2d at 313, 639 N.Y.S.2d 283, 662 N.E.2d 763. The court denied punitive damages because the action was grounded on a breach of contract and the plaintiff failed to state any tort outside of the contract. *Id.* at 321, 639 N.Y.S.2d 283, 662 N.E.2d 763. In arriving at this conclusion, the Court stated: "Where a lawsuit has its genesis in the contractual relationship between the parties, the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract." *Id.* at 87 N.Y.2d at 316, 639 N.Y.S.2d 283, 662 N.E.2d 763. The Court further noted that "[a] defendant may be liable in tort when it has breached a duty of reasonable care distinct from its contractual obligations, or when it has engaged in tortious conduct separate and apart from its failure to fulfill its contractual obligations". *Id.*

This case differs from *Rocanova* and *New York Univ.* because the defendants in *Rocanova* and *New York Univ.,* would have no duty to the plaintiffs in the absence of a contract, and, thus, the contract in each of those cases was essential to the plaintiffs' claims. Here, it is less clear whether the plaintiff's causes of action for breach of the fiduciary duty of good faith and loyalty; diversion of corporate opportunity; misappropriation of confidential information and trade secrets; unfair competition; and tortious interference with prospective economic advantage depend on the Employment Agreement between the parties.

The Second Circuit has explained that "[w]here the plaintiff and defendant are parties to a contract, and the plaintiff seeks to hold the defendant liable in tort,

the plaintiff must prove that the defendant breached a duty 'independent' of its duties under the contract. *Carvel Corp. v. Noonan,* 350 F.3d 6, 16 (2d Cir.2003) (citing *Clark–Fitzpatrick Inc. v. Long Island Railroad, Co.,* 70 N.Y.2d 382, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) ("It is a well established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated")). In *Carvel,* franchisees sued their franchisor, Carvel Corp., for tortious interference with prospective economic relations when Carvel began selling its products in supermarkets in direct competition with the franchisees' retail stores. *Carvel,* 350 F.3d at 9–11. The court stated that in the usual circumstance: "That parties to a contract may not sue each other in tort absent a violation of an 'independent duty' implies the proposition that if a party to a contract does violate an 'independent duty,' it may be liable in tort." *Id.* at 17. However, the Second Circuit did not reach the issue and certified to the New York State Court of Appeals the question of whether the franchisees stated a claim for tortious interference with prospective economic relations under the specific facts of that case. *Carvel,* 350 F.3d at 23.

Undoubtedly, the present claims could be made against a disloyal employee regardless of the existence of an employment contract. *See Kubin v. Miller,* 801 F.Supp. 1101, 1119 (S.D.N.Y.1992) ("[W]here a plaintiff includes 'additional allegations of wrongdoing,' distinct from the breach of contract claim, an action in tort is properly pled.") (quoting *Matzan v. Eastman Kodak Co.,* 134 A.D.2d 863, 863, 521 N.Y.S.2d 917 (4th Dep't 1987)); *Paz Systems, Inc. v. Dakota Group Corp.,* 514 F.Supp.2d 402, 407–10 (E.D.N.Y.2007) (Wexler, J.) (finding an employee liable for misappropriation of trade secrets, unfair competition, and breach of fiduciary duty under New York law); *Hartford Fire Ins. Co. v. Jainulabdeen,* No. 06CV2171, 2007 WL 1028930, at *4 (E.D.N.Y. March 30, 2007) (finding, under New York law, that employee breached duty of utmost good faith and loyalty by converting employer's property); *Don Buchwald & Assoc., Inc. v. Rich,* 281 A.D.2d 329, 330, 723 N.Y.S.2d 8 (1st Dep't 2001) (finding that plaintiff talent agency stated a claim for tortious interference with economic relations against faithless employees who courted agency's clients); *Schneider Leasing Plus, Inc. v. Stallone,* 172 A.D.2d 739, 741, 569 N.Y.S.2d 126 (2d Dep't 1991) ("An employee may create a competing business prior to leaving his employer without breaching any fiduciary duty unless he makes improper use of the employer's time, facilities or proprietary secrets in doing so."); *Maritime Fish Prods., Inc. v. World–Wide Fish Prods., Inc.,* 100 A.D.2d 81, 88 474 N.Y.S.2d 281 (1st Dep't 1984) (finding a salesman, who was not bound by restrictive covenant, diverted corporate opportunity from employer by secretly pursuing and profiting from opportunities properly belonging to his employer); *see also Augat, Inc. v. Aegis, Inc.,* 409 Mass. 165, 173, 565 N.E.2d 415 (1991) (stating that an at-will employee who plans to compete with employer may not appropriate employer's trade secrets; may not solicit employer's customers while still working for the employer; and may not carry away certain information, such as lists of customers).

Furthermore, in *Carvel,* the Second Circuit certified a second question to the New York Court of Appeals. This was whether evidence of public harm was required for a punitive damages claim if it found that the plaintiff had stated a claim in tort. *Carvel,* 350 F.3d at 26. In so doing, Second Circuit described the case as "presenting mixed issues of contract and tort" and explained:

"New York courts have applied the 'public harm' standard only to cases in which the defendant's allegedly tortious conduct was directly related to the contract between the plaintiff and defendant. That is, the typical fact pattern in which New York courts apply this standard is where the plaintiff claims that the defendant fraudulently misrepresented something about the contract between the two."

*Id.* at 25 (citing *Rocanova,* 83 N.Y.2d at 616–17, 612 N.Y.S.2d 339, 634 N.E.2d 940). The New York Court of Appeals never reached the issue of punitive damages, however, because it determined that evidence was insufficient to find intentional interference with prospective economic relations. *Carvel Corp. v. Noonan,* 3 N.Y.3d 182, 189, 818 N.E.2d 1100, 785 N.Y.S.2d 359 (2004).

In addition, in *Don Buchwald & Assocs., Inc. v. Rich,* the court allowed punitive damages against disloyal employees, stating: "The limitation of an award for punitive damages to conduct directed at the general public applies only in breach of contract cases, not in tort cases for breach of fiduciary duty.... Diversion of assets to a secretly created competitive organization constitutes a breach of fiduciary duty." *Buchwald,* 281 A.D.2d at 330, 723 N.Y.S.2d at 8; *see also South Pierre Assocs. v. Meyers,* 12 Misc.3d 955, 961, 820 N.Y.S.2d 485 (N.Y. Civ.Ct. N.Y. County 2006) ("[P]unitive damages are allowable in tort cases such as this [breach of fiduciary duty] so long as the very high threshold of moral culpability is satisfied." (internal citations and quotations omitted)).

Despite the varying rules of the cases set forth above, the Court finds that the plaintiff's allegations in this case bear a striking similarity to the recent case *Paz Systems, Inc. v. Dakota Group Corp.* In *Paz,* the defendant, an employee of a corporation engaged in design and sale of retail wall systems misappropriated the employer's intellectual property and other business data, including customer and vendor lists, and used it to divert sales to a company in which he had an ownership interest. *Id.* at 405–06. The employer sued for (1) misappropriation of trade secrets; (2) unfair competition; and (3) breach of fiduciary duty. *Id.* at 407. Following a bench trial, the court found the defendant liable on all three counts, stating: "Under New York law, an employee has a common law duty of good faith and fair dealing to the employer not to exploit confidential information for the benefit of himself and others." *Id.* at 409–10. Further, the court awarded punitive damages on the plaintiff's misappropriation and unfair competition claims, noting that the defendant's misappropriation of his employer's trade secrets was "particularly egregious, in the apparently calculated nature of the misappropriation...." *Id.* Thus, the Court finds that the plaintiff's tort claims are independent of the parties' contract and it is not essential that the plaintiff allege a pattern of conduct directed at the public in general to assert a claim for punitive damages here.

Finally, with respect to the claims in the instant case, under New York law, punitive damages may be awarded for each of the activities alleged in the amended complaint. *See Getty Petroleum Corp. v. Island Transp. Corp.,* 878 F.2d 650, 657 (2d Cir.1989) ("In the context of a claim for unfair competition, we have noted that New York law clearly permits punitive damages where a wrong is aggravated by recklessness or willfulness, ... whether or not directed against the public generally ...." (internal quotation and citation omitted)); *Paz Systems, Inc.,* 514 F.Supp.2d at 407–10 (awarding punitive damages for misappropriation of trade secrets and un-

fair competition); *Topps Co., Inc. v. Cadbury Stani S.A.I.C.,* 380 F.Supp.2d 250, 266–68 (S.D.N.Y.2005); (finding that under New York law, punitive damages are available for misappropriation of trade secrets without proof of public harm, if the defendant's conduct is gross and wanton); *Advance Relocation & Storage Co., Inc. v. Local 814, Intern. Broth. of Teamsters,* No. 03CV4475, 2005 WL 665119, at \*3 (E.D.N.Y. March 22, 2005) (awarding punitive damages for tortious interference with prospective economic advantage); *H & R Indus., Inc. v. Kirshner,* 899 F.Supp. 995, 1012 (E.D.N.Y.1995) (citing *Wolff v. Wolff,* 67 N.Y.2d 638, 641, 499 N.Y.S.2d 665, 667, 490 N.E.2d 532 (1986) (corporate officer found to have diverted corporate opportunity "may be accountable to for the fruits of his wrongdoing")); *Kubin,* 801 F.Supp. at 1122 (stating that "New York law recognizes breach of fiduciary duty as an exception to the general rule that punitive damages are not recoverable for breach of contract claims."). Accordingly, the defendant's futility argument must fail.

### III. CONCLUSION

For the foregoing reasons, it is hereby

**ORDERED,** that the plaintiff's motion pursuant to FED.R.CIV.P. 15(a) for leave to amend the complaint to assert punitive damages against defendant Howard Kaye on its second, third, fourth, fifth, and seventh claims is granted; and it is further

**ORDERED,** that the plaintiffs are to serve the amended complaint within twenty days of the date of this order.

**SO ORDERED.**